**SO ORDERED.**

**SIGNED this 16 day of June, 2010.**



*Dale L. Somers*
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

For on-line use; not for print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| PAUL C. MILLER, | CASE NO. 05-26140 |
| DEBTOR. | CHAPTER 7 |
| ANN K. OSBORN, | |
| PLAINTIFF, | |
| v. | ADV. NO. 06-6028 |
| PAUL C. MILLER, | |
| DEFENDANT. | |

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Complaint in this adversary proceeding seeks to have various obligations of

Defendant, Debtor Paul Miller, to his ex-spouse, Plaintiff Ann Osborn, declared non-

dischargeable. The matter under advisement is Plaintiff's motion for summary judgment on the 11 U.S.C. §§ 523(a)(5) and (6) claims. When the motion for summary judgment was filed, plaintiff appeared by Neil Sader, of Sader & Garvin, LLC.[1] Defendant appears by Jeffrey Deines, of Lentz Clark Deines, P.A. There are no other appearances. The Court has jurisdiction.[2]

**I. UNCONTROVERTED FACTS.**

The Court finds that the following facts are uncontroverted for purposes of summary judgment.[3]

Plaintiff and Defendant were married for 11 years, and four children were born of the marriage. They were divorced through a Judgment and Decree of Dissolution of Marriage (hereafter "Divorce Decree") entered in the Circuit Court of Jackson County, Missouri on July 3,1996.

---

[1] After Defendant's response to the motion for summary judgment was filed, Plaintiff's counsel's motion to withdraw was approved by the Court, and Plaintiff has thereafter appeared *pro se.*

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). There is no objection to venue or jurisdiction over the parties.

[3] On April 25, 2008, Plaintiff moved for summary judgment as to the claims of nondischargeability under 11 U.S.C. §523(a)(5) and (6) and included statements of fact in accord with the standards of Bankruptcy Rule 7056. Defendant responded, controverting some statements of fact and setting forth additional statements of facts. The withdrawal of counsel for Plaintiff was approved before a reply brief was filed. Plaintiff *pro se* thereafter filed a reply, but the reply does not respond to Defendant's statements of additional facts in accord with the standards of Bankruptcy Rule 7056 and Local Bankruptcy Rule 7056.1. The additional statements of facts in Defendant's opposition brief are therefore considered uncontroverted for purposes of ruling on the motion for summary judgment.

The Divorce Decree provides that Plaintiff "will receive contractual non-modifiable maintenance from" Defendant in the form of $1,300 per month commencing July 1, 1996 through June 30, 2003, and medical insurance coverage for 10 years, unless such obligations terminated earlier upon the occurrence of stated events. The parents are awarded joint custody of the children, and Defendant is ordered to pay child support.

The Divorce Decree incorporated the parties' Separation Agreement and Property Settlement Agreement (hereafter "SAPSA"). In Section I, the SAPSA provides for the division of 12 categories of marital property, such as real estate, securities, business interests, and cash, and for the allocation of indebtedness. Generally, these provisions require Debtor to make both immediate cash payments to Plaintiff and also deferred cash payments of proceeds from property. These obligations are absolute and contingent upon future circumstances of either party. Section II addresses maintenance of spouses. It provides, unless such obligations are earlier terminated upon the occurrence of stated conditions, in subsection (A) that husband shall pay wife "a contractual non-modifiable maintenance" $1,300 per month commencing July 1, 2006 through June 30, 2003, and in subsection (B) that husband shall pay for or provide medical insurance for 10 years. The SAPSA further provides in Section II (C), "Except for the maintenance provided for in the preceding two paragraphs A and B, each party waives any claim for maintenance from the other and further waives any right to modify this waiver in the future . . . ." In Section II (D), the parties acknowledge that the maintenance payments shall be deductible by the husband and taxable to the wife as income. Each party further agrees that "this Separation and Property Settlement Agreement shall operate and is accepted by each in lieu and in bar and full satisfaction of all maintenance and support arising out of the martial relationship with the

3

other." Subsection III contains detailed provisions regarding joint custody of the children and child support.

On August 10, 2001, Plaintiff filed a Motion to Revive the Judgment and Decree of Dissolution of Marriage of July 1, 1996. The matter was referred to a Master, who, after hearings held on December 18 and 19, 2002 and January 9, 2003, filed a 46 page Master's Report on about January 9, 2004. The Master's Report recites stipulations of the parties as to the obligations in the Divorce Decree which had been satisfied. These include, but are not limited to, the following: Defendant has paid to Plaintiff, or on behalf of Plaintiff, in full, as contractual non-modifiable maintenance $1,300 per month and all medical insurance premiums from July 1,1996 through September 1998, when such obligations terminated; auto lease and insurance through October 1, 1998; and $407,000 cash payments as a division of property. The Master's Report then makes findings of fact as to the portions of the SAPSA about which there were contentions of noncompliance. The Master's Report, in part, concludes that the judgment in favor of Plaintiff should be revived as follows: $5,496.73 of unpaid monthly child support through December 31, 2002, plus interest of $6,136.95 and unpaid activity fees; $100,000 arising from the sale of the Colorado residence; $30,000 for a vehicle due on October 31, 1998, plus interest at the judgment rate from such date; $167,265.09 plus interest arising from Defendant's obligation to pay Plaintiff 35% of the net proceeds of Plaza Mortgage litigation; Defendant's obligation to provide life insurance for the benefit of the children; payments in an unspecified amounts for Plaintiff's interest in Merrill Lynch accounts; and payments in an unspecified amount based upon the Defendant's earnings for HHC in 1996 and 1997. For each of these failures to satisfy the SAPSA, the Master's Report includes detailed findings of fact as to

4

Defendant's conduct with respect to his using the funds for purposes other than payment in accord with the SAPSA. The Court has reviewed those findings and, although they are not controverted, finds it unnecessary to set them out in detail here.

The Master's Report was adopted by the divorce court. On March 31, 2004, Plaintiff filed in the divorce proceedings a motion for various post judgment relief, including partial reconsideration of the judgment adopting the Master's Report, assessment of attorneys fees, and for a hearing to liquidate all unliquidated judgment amounts. There was no request in the motion that Defendant's actions be determined to have caused Plaintiff willful and malicious injuries. Defendant was *pro se* at the time of this motion and was not present at the hearing on the motion held on September 7, 2004, at which Plaintiff testified. At some time prior to the September hearing, Defendant had informed Plaintiff's counsel that he would likely file for bankruptcy. Following the hearing, Plaintiff's counsel drafted the Judgment Order, filed in the divorce court on September 15, 2004. Debtor argues that Plaintiff's counsel's conduct was fraudulent.[4] It made findings of fact liquidating the amounts which were not specified in the Master's Report and determining that Defendant had caused willful and malicious injury to Plaintiff. Judgment was entered against Defendant in favor of Plaintiff as follows: $49,421.82 plus interest of $13,215.59 for unpaid child support and activity fee payments; $940,817.84 plus interest of $643,783.76 interest for property settlement.

The elements included in the property settlement judgment were: HHC income ($152,050.00 principle); the Merrill Lynch Accounts ($491,502.75 principle); the Plaza Mortgage lawsuit ($167,265.09 principle); the Colorado House ($100,000 principle); and the

---

[4] *See* Doc. 68.

Vehicle expense ($30,000 principle). As to each of these elements of the property settlement judgment, the findings of fact state that the actions of Defendant in failing to pay Plaintiff caused willful and malicious injury. In addition Judgment Order finds that "the actions taken by Paul C. Miller to prevent Ann K. Osborn from receiving the money due her pursuant to each of the matters . . . constituted willful and malicious injuries by Paul C. Miller to Ann K. Osborne." Judgment was also entered in favor of Plaintiff against Defendant for attorneys fees of $114,578.29 plus accrued interest through September 7, 2004 of $18,950.44. The court also found "that the actions of Respondent Paul C. Miller in necessitating the Petitioner to file legal action and incur the legal and Special Master expenses associated therein constituted a willful and malicious injury by Paul C. Miller to Anne K. Osborn."

Defendant filed for relief under Chapter 7 on October 13, 2005.[5] On January 17, 2006, Plaintiff filed the Adversary Complaint. She contends, inter alia, that the judgment for the HHC income, the Merrill Lynch accounts, the Plaza Mortgage lawsuit, the Colorado house, and the vehicle expense (hereafter collectively "SAPSA Proceeds Property Judgment") is nondischargeable pursuant to § 523(a)(4) (breach of fiduciary duty); § 523(a)(5)(spousal maintenance excepted from discharge); § 523(a)(6) willful and malicious injury; and § 523(a)(15) (debts incurred as a result of divorce not of the kind excepted from discharge

---

[5] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C.A. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

6

pursuant to §523(a)(5) because discharge would result in benefit to Defendant outweighing the detrimental consequences to Plaintiff and the children).[6]

**II. The Motion for Summary Judgment and Defendant's response.**

Osborn seeks summary judgment that Debtor's SAPSA Proceeds Property Judgment to her is nondischargeable as a matter of law, pursuant to §§ 523(a)5) and (6). As to the exception to discharge under § 523(a)(5), she argues that as a matter of law the judgment for the five SAPSA Proceeds Property obligations are support obligations. As to the exception under § 523(a)(6), Plaintiff argues that the state court findings that the Defendant's actions in failing to satisfy his SAPSA obligations caused wilful and malicious injury to Plaintiff are binding in this litigation by virtue of the *Rooker-Feldman* doctrine or pursuant to the doctrine of collateral estoppel. Alternatively, if summary judgment is denied, Plaintiff argues that each finding of fact by the state court is entitled to full faith and credit.

Defendant responds that the judgment for the SAPSA Proceeds Property are for property division, not maintenance or support. As to the § 523(a)(6) argument, Defendant argues that the willful and malicious findings in the Judgment Order were improperly procured and neither the *Rooker-Feldman* doctrine or collateral estoppel are applicable. As to the extent that the findings of fact of the state court are binding in this action, Defendant asserts that any findings in the underlying documents related to the willful and malicious conduct should be disregarded.

**III. The Court denies summary judgment on the § 523(a)(5) claim.**

At the time this bankruptcy case was filed, 11 U.S.C. § 523(a)(5) provided:

---

[6] Since this case was filed before the effective date of BAPCPA, it is governed by the pre October 17, 2005 version of 11 U.S.C. § 523.

7

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> * * *
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

In the Tenth circuit, "[t]he party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support and that the obligation was, in substance, support."[7] Of course, when the party with the burden of proof is seeking such a determination in a motion for summary judgment, there must be no material facts in controversy and the foregoing two elements must be satisfied as a matter of law.[8]

The initial inquiry is the parties' shared intent at the time the obligation arose. The written agreement between the parties is persuasive evidence of intent.[9] In this case, the obligations of the SAPSA which gave rise to the judgments were not designated by the Divorce Court or the SAPSA as for alimony or maintenance. Rather, the written documents indicate the

---

[7] *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 723 (10th Cir. 1993).

[8] Fed. R. Bankr. P. 7056.

[9] *In re Sampson*, 997 F.2d at 723.

8

SAPSA Proceeds Property Judgment is to satisfy Debtor's property division obligation. Section II of the SAPSA, entitled "Maintenance of Spouses," obligates Defendant to make monthly payments from July 1996 thorough June 30, 2003 and to continue Plaintiff's of health insurance for 10 years, unless such obligations were terminated by Plaintiff's remarriage or other change in circumstances. The SAPSA provides that except for such maintenance, "each party waives any claim for maintenance from the other and further waives the right to modify this waiver in the future." Defendant fully performed these maintenance obligations. The 5 SAPSA obligations found owing the Plaintiff in the Judgment Order arose from Defendant's failure to fully perform obligations included under Section I(B) of the SAPSA, labeled Marital Property. The Judgment Order, drafted by Plaintiff's counsel, identified the five items for which judgment was entered as "Property Settlement."

Although, as argued by Plaintiff, the Court agrees that the labels assigned to the obligations do not foreclose nondischargability under §523(a)(5), in the circumstances of this case, the Court finds that they at the very least create a disputed issue of material fact as the parties' mutual intent at the time of the divorce. The only portion of the SAPSA which Plaintiff points to as evidencing mutual intent the judgments are for nondischargable maintenance obligations is the sentence, "Each party further agrees that this Separation and Property Settlement Agreement shall operate and is accepted by each in lieu and in bar and full satisfaction of all maintenance and support arising out of the martial relationship with each other." This sentence is the last in a two sentence paragraph at the end of Section II, Maintenance of Spouses. The first sentence states that maintenance payments, the terminable monthly payments and the insurance premium obligation, are deductible by the husband and

9

taxable to the wife.  The natural meaning of the "in lieu" sentence is to reinforce the waiver of additional maintenance.  Most certainly, it does not operate to conclusively convert the division of marital property addressed in Section I into a support obligation.

When determining the substance of spousal obligations, the courts often examine the financial circumstances of the parties at the time of the divorce.[10]  Plaintiff's statement of uncontroverted facts contains a comparison of the parties financial circumstance, which the Court declines to include in this opinion because of the personal nature of the information.  The Court finds the comparison is not sufficiently complete to provide a basis for characterizing the SAPSA Proceeds Property Judgment as support since it omits any reference to parties' net worth and the property division obligations of the Defendant which have been satisfied and therefore are not in issue.  Suffice it to say, the Court finds the argument relating to the parties' financial circumstances, like the argument of shared intent, insufficient to establish as a matter of law that the SAPSA Proceeds Property Judgment is in substance support obligations.

For the foregoing reasons, the Court denies Plaintiff's Motion for Summary Judgment on her claim that the SAPSA Proceeds Property Judgment is nondischargeable under § 523(a)(5).

**IV. The Court denies summary judgment on the § 523(a)(6) claim.**

**A. Plaintiff's arguments.**

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  "Not every intentional act or breach of an agreement falls within the exception to discharge. . . . Rather, . . . 'willful and

---

[10] *See* 4 *Colliers on Bankruptcy* ¶ 523.11[6][b] (Alan N. Resnick & Henry J. Sommer eds.-in-chief 16th ed. 2010).

malicious injury' occurs when the debtor, without justification or excuse, and with full knowledge of the specific consequences of his conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury."[11]

In this case, Plaintiff when moving for summary judgment relies upon the findings of willful and malicious injury in the Judgment Order. She asserts that under the *Rooker-Feldman* doctrine, or collateral estoppel, the state court findings of willful and malicious injury are binding on this Court. The Court finds, for the reasons stated below, that neither doctrine applies in this litigation to preclude Defendant from defending the claim of nondischargeability based on the contention that his conduct was not willful and malicious.

**B. The *Rooker-Feldman* doctrine is not applicable.**

"As a general rule, the *Rooker-Feldman* doctrine prevents bankruptcy courts from exercising subject matter jurisdiction over claims if doing so would require them to engage in an appellate review of a state court judgment."[12] The Supreme Court in its 2005 decision in *Mobil Oil* clarified the application of the *Rooker-Feldman* doctrine by stating:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the

---

[11] *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1526-27 (10th Cir. 1993).

[12] Dickerson, *Colliding Judgments: Applying the Rooker-Feldman Doctrine in Bankruptcy Cases*, 14 J. Bankr. L. & Prac. 4 art. 2 (2005).

11

circumscribed doctrines that allow federal courts to stay or dismiss
proceedings in deference to state-court actions.[13]

Plaintiff's suggested use of the doctrine does not fall within this definition. It is Plaintiff, the party who prevailed in state court, who has brought the dischargeability complaint. She is not complaining of an injury caused by the state court judgment.

Several courts have rejected reliance on *Rooker-Feldman* under circumstances materially identical to this case. In *Binns*, the Eight Circuit BAP held that a bankruptcy court erred when it relied on the *Rooker-Feldman* doctrine as a basis to grant summary judgment to a judgment creditor in dischargeability litigation based upon a prepetition fraud default judgment against the debtors on a fraud claim.[14] The panel found that the case "simply does not present a situation covered by the *Rooker-Feldman* doctrine - the state court losers (the Debtors) are not trying to obtain a review and a rejection of the Default Judgment; to the contrary, the state court winner (the Plaintiff) is trying to offensively use the Default Judgment to establish the basis for a derivative claim, *i.e.*, a determination of nondischargeability."[15] The Ninth Circuit BAP in *Lopez* reached the same conclusion.[16] A judgment creditor that had obtained a prepetition state-court judgment against the Chapter 7 debtor for willful and malicious misappropriation of trade secrets filed a dischargeability complaint and prevailed on summary judgment. The debtor appealed, and the BAP held the bankruptcy court erred when relying on the *Rooker-Feldman* doctrine. The panel reasoned that the debtor was not trying to reverse the state court judgment and the

---

[13] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[14] *Jacobus v. Binns (In re Binns)*, 328 B.R. 126 (8th Cir BAP 2005).

[15] *Id.*, 328 B.R. at 131-32.

[16] *Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99 (9th Cir BAP 2007).

12

*Rooker-Feldman* doctrine does not override or supplant issue and claim preclusion doctrines, that govern the effect of a prior state court judgment in dischargeability litigation.[17]

Another example of rejection of the *Rooker-Feldman* doctrine under circumstances very similar to this case is *Andress*,[18] decided by the Bankruptcy Court for the Northern District of Oklahoma. A judgment creditor, which had purchased debtor's business prepetition filed an adversary complaint seeking determination that a prepetition judgment arising from debtor's willful and malicious breach of a covenant not to compete was not dischargeable. The court rejected the plaintiff's reliance of the *Rooker-Feldman* doctrine as a basis for finding the state court's willful and malicious finding binding in federal court. It observed that the debtor, who sought to have the federal court independently determine if his conduct was willful and malicious, was not the plaintiff in the adversary proceeding and was not seeking to set aside the judgment. Rather, the state court plaintiff was attempting to use the judgment as an offensive weapon to prevent the federal court from determining whether the debt may be discharged. The court concluded "[t]he argument runs contrary to the ruling of the United Sates Supreme Court in *Exxon Mobil*."[19]

For the foregoing reasons, the Court holds that the *Rooker-Feldman* does not provide a basis to grant summary judgment to plaintiff on her § 523(a)(6) claim. The doctrine simply does not apply in this case where the state court plaintiff is attempting to use the willful and malicious

---

[17] *Id.*, 367 B.R. 103-04.

[18] *Kite Mech. Serv., Inc. v. Andress (In re Andress)*, 345 B.R. 358 (Bankr. N.D. Okla. 2006).

[19] *Id.*, 345 B.R. at 368.

13

finding offensively to preclude Defendant from litigating in bankruptcy court whether he caused willful and malicious injury to Plaintiff.

**C. Issue preclusion does not bar litigation of the nature of Defendant's conduct.**

Collateral estoppel principles apply in discharge exception proceedings pursuant to § 523(a).[20] The full faith and credit statute, 28 U.S.C. § 1738, requires a federal court to look first to state law in determining the preclusive effect of a state court-judgment.[21] Missouri law of issue preclusion therefore is applicable in this case. In Missouri,

> . . . The doctrine of collateral estoppel means "when an issue of ultimate fact has been determined by a valid judgment, it may not again be litigated between the same parties." In deciding whether collateral estoppel applies, the following four factors are considered: (1) is the issue in the present case identical to the issue decided in the prior adjudication; (2) was there a judgment on the merits in the prior adjudication; (3) is the party against whom collateral estoppel asserted the same party or in privity with a party in the prior adjudication; and (4) did the party against whom collateral estoppel is asserted have a full and fair opportunity to litigate the issue in the prior suit. The doctrine applies only to those issues that were necessarily and unambiguously decided.[22]

All elements must be present before a party is estopped to litigate an issue previously determined in state court.

In this case, the third element, identify of parties is present. Plaintiff and Defendant were the parties to the divorce proceedings.

---

[20] *Grogan v. Garner*, 498 U.S. 279, 284, n.11 (1991).

[21] *Marrese v. Amer. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985).

[22] *State v. Nunley,* 923 S.W.2d 911, 922 (Mo.1996)(citations omitted). The Eighth Circuit Court of Appeals applied the *Nunley* statement of the elements of issue preclusion in dischargeability litigation in *Fisher v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641-42 (8th Cir. 1999).

14

The remaining elements are not satisfied. For the Plaintiff to satisfy the first element, she must show that the issue in the present case is identical to the issue decided in the prior adjudication. This requires a comparison of the standards applicable in the state court proceeding with the standards applicable in nondischargeability litigation. For example, in *Adams*, Bankruptcy Judge Venters held a bare finding by a state court that debtor's conduct was "willful, wanton, and malicious" does not establish that the conduct was "willful and malicious" for purposes of § 523(a)(6).[23] Examination of the state law which was the basis for the prior judgment showed that the act found to be "willful, wanton, and malicious " under Missouri law is not necessarily done with the certainty that harm will occur as required by §523(a)(6)."[24] In this case such a comparison fails to show identity of issues. As far as the Court can determine, the willfulness and maliciousness of Debtor's failure to satisfy the five SAPSA obligations was not in issue in the proceedings before the Master or before the Divorce Court when Plaintiff sought to alter or amend the judgment incorporating the Special Master's findings. Because there was no state law standard for the prior willful and malicious finding, the Court concludes the first element of collateral estoppel, identity of issues, is not satisfied.

The second element requires the prior ruling to have been on the merits. Under Missouri law for purposes of collateral estoppel, "[a] 'judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without

---

[23] *Jaynes v. Adams (In re Adams)*, 349 B.R. 199, 203-04 (Bankr. W.D. Mo. 2006). *See also Duvall v. Maxey (in re Maxey)*, 395 B.R. 665, 671-673 (Bankr. W.D. Mo. 2008) (comparing § 523(a)(6) definitions of willful and malicious with state law standards for imposing liability for knowingly making a false police report).

[24] *In re Adams*, 349 B.R. at 203.

trial.'"[25] In this case, although the liability judgment was clearly on the merits, the Court questions whether the foregoing definition was satisfied as the willful and malicious finding, since Debtor had no notice that the issue was to be heard and was not present at the hearing where testimony was received. This particular aspect of the state court judgment is similar to a default judgment without notice. The Court also finds the fourth element, full and fair opportunity to litigate the issue, is not satisfied. Under Missouri law, when considering this element, the courts consider the following factors:

> (1) did the person against whom estoppel is asserted have a strong incentive to litigate the first action; (2) does the second forum afford the party against whom estoppel is asserted procedural opportunities not available in the first action; (3) is the prior judgment, upon which estoppel is based, inconsistent with one or more prior judgments; and (4) was the forum in the first action substantially inconvenient to the party against whom estoppel is asserted.[26]

As to the first and second of these factors, the uncontroverted facts show there was not a full and fair opportunity for Debtor to litigate in the state court. First, he did not have a strong incentive to litigate since the willfulness and maliciousness of his conduct was not a factor in the state court relief sought by Plaintiff and, in addition, he had no notice that the issue would be presented the divorce court. The issue was apparently raised at the September 7, 2004 hearing on the motion to alter or amend when Plaintiff testified to that effect. Defendant had not been provided notice that the issue would be raised and was not present at the hearing. The only opportunity which Debtor had to object to the finding arose after the submission of the Judgment

---

[25] *St. Louis Univ. v. Hesselberg Drug Co.*, 35 S.W.3d 451, 455 (Mo. App. E.D. 2000), quoting *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 856 (Mo. App. E.D. 1999).

[26] *Id.*, 35 S.W.3d at 455-56.

Order, which was prepared by Plaintiff's counsel. Second, this Court presents Debtor with procedural opportunities not available in the first action, such as the right to testify on his own behalf and the opportunity to cross examine Plaintiff.

For the foregoing reasons, the Court holds that collateral estoppel or issue preclusion does not bar Debtor from litigating whether his failure to satisfy the five elements of the SAPSA Proceeds Property Judgment caused willful and malicious injury.

**V. Collateral Estoppel applies to most findings made in the Divorce Court.**

Plaintiff requests, if this Court denies her motion for summary judgment, that the Court rule that "each finding of fact by the state court is entitled to full faith and credit," with the exception of two findings. The Court is unsure which findings are to be excepted. Debtor responds that the willful and malicious findings were obtained by improper means and should be disregarded.

The Court therefore surmises that the parties are in agreement that substantially all of the facts found by the Master and as a result of the motion for partial reconsideration are binding in this litigation under the doctrine of collateral estoppel. The Court agrees, but declines without more specific input from the parties, to determine which particular findings are excluded. This is a matter which can be addressed in a pretrial order and/or ruled on by the Court upon proper motion prior to trial.

**CONCLUSION.**

For the foregoing reasons, Plaintiff's motion for summary judgment on her §§ 523(a)(5) and (a)(6) claims is denied.

**IT IS SO ORDERED.**

###